FIREMAN'S FUND INSURANCE COMPANY v HAROLD TURNER, INC

Docket No. 90731. Submitted February 10, 1987, at Detroit. Decided May 4, 1987.

Fireman's Fund Insurance Company issued various insurance policies to Harold Turner, Inc. (HTI), an automobile dealership. The policies were cancelled on July 16, 1979, for nonpayment of premiums. During the period in which the policies were in effect, HTI submitted claims which Fireman's Fund paid. On June 30, 1980, the assets of HTI were sold and a bulk sale affidavit was prepared and executed by Richard Turner stating that all debts of HTI had been paid in full. Approximately $650,000 of the sale proceeds remained after the debts had been paid, and that sum was distributed to Richard and Joanne Turner, directors and shareholders of HTI. Fireman's Fund was not listed as a creditor in the bulk sales affidavit, and none of the sale proceeds were distributed to Fireman's Fund. HTI filed a certificate of dissolution with the Department of Commerce, which was approved on October 29, 1982. In August, 1982, Fireman's Fund notified Richard Turner that a lawsuit would be commenced against HTI and Richard and Joanne Turner if unpaid premiums of $54,625 were not paid. The premiums remained unpaid and Fireman's Fund filed suit against HTI and the Turners in Oakland Circuit Court. The court, Robert C. Anderson, J., granted summary disposition in favor of Fireman's Fund, finding the distribution of HTI's assets to the Turners was a fraudulent conveyance under the Uniform Fraudulent Conveyance Act and an illegal dividend under the Business Corporation Act. Defendants appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Corporations §§ 2862-2878.

Am Jur 2d, Judgments §§ 679 *et seq.*

Rights and remedies of creditor of bulk sales transferor not listed in accordance with UCC § 6-104(1)(a), (2) and (3). 18 ALR4th 1090.

See the annotations in the Index to Annotations under Corporate Stock and Stockholders, Dissolution or Liquidation.

1. The Business Corporation Act does not provide a remedy at law adequate to prevent application of the Uniform Fraudulent Conveyance Act.

2. The Business Corporation Act does not conflict with the Uniform Fraudulent Conveyance Act and, therefore, does not supersede it.

3. The transfer of HTI's assets to the Turners rendered HTI insolvent. The trial court properly granted summary disposition in favor of plaintiff pursuant to § 4 of the Uniform Fraudulent Conveyance Act.

4. The trial court did not err by reconsidering an earlier ruling at which time it initially denied plaintiff's motion for summary disposition.

Affirmed.

1. FRAUD — CORPORATIONS — DISSOLUTION — DISTRIBUTION OF ASSETS — BUSINESS CORPORATION ACT.

The Business Corporation Act does not provide a legal remedy adequate to prevent application of the Uniform Fraudulent Conveyance Act where a corporation has been dissolved and the assets of the corporation distributed to its shareholders while there are still outstanding debts of the corporation to be paid (MCL 450.1101 *et seq.*, 566.11 *et seq.*; MSA 21.200[101] *et seq.*, 26.881 *et seq.*).

2. FRAUD — CORPORATIONS — DISSOLUTION — DISTRIBUTION OF ASSETS — BUSINESS CORPORATION ACT.

The Business Corporation Act does not conflict with the Uniform Fraudulent Conveyance Act as to remedies for fraudulent transfer of corporate assets upon dissolution where unpaid creditors remain (MCL 450.1551; MSA 21.200[551]).

3. JUDGMENTS — MODIFICATION OF JUDGMENT — COURT RULES.

A court has discretion to modify any form of decision prior to final judgment (MCR 2.604).

*Milmet & Vecchio, P.C.* (by *Donald E. Schuster*), for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *Randall J. Gillary*), for defendant.

Before: DANHOF, C.J., and WEAVER and J. M. BATZER,* JJ

PER CURIAM. Defendant appeals from a January 16, 1986, order of summary disposition by the Oakland Circuit Court in favor of plaintiff Fireman's Fund Insurance Company.

Effective March 5, 1978, plaintiff issued various insurance policies to defendant Harold Turner, Inc. (HTI), an automobile dealership. The policies were cancelled on July 16, 1979, for nonpayment of premiums. During the period in which the policies were in effect, HTI submitted claims which plaintiff paid. The instant action was instituted on February 1, 1983, in an effort to collect the unpaid premiums, which totaled $54,625.

There is no dispute that HTI did not pay the earned premiums. The sole issue is whether Richard and Joanne Turner, directors and shareholders of HTI, may be held personally liable for the corporate debt. HTI is no longer collectible. Its assets were sold to Dean Sellers, Inc., on June 30, 1980. At the time of sale, a bulk sale affidavit was prepared and executed by Richard Turner. It stated that all debts of HTI had been paid in full. After HTI's debts had been paid, approximately $650,000 of the sale proceeds remained. This sum was distributed to Richard and Joanne Turner in January, 1981. Plaintiff was not listed as a creditor in the bulk sale affidavit nor were any of the sale proceeds distributed to plaintiff. On February 18, 1981, HTI filed a certificate of dissolution with the Michigan Department of Commerce. However, the department did not approve the certificate until October 29, 1982, when a dispute concerning outstanding taxes of HTI was finally resolved.

Richard and Joanne Turner's defense was that

* Circuit judge, sitting on the Court of Appeals by assignment.

neither of them was aware of the outstanding debt until August, 1982, when Richard Turner received notice from plaintiff's counsel that suit would be commenced if the bill was not paid. Turner testified at his deposition that he did not become involved in the payment of HTI's bills unless a creditor contacted him directly. It is undisputed that, seven days after plaintiff cancelled the various policies for nonpayment of funds, Richard Turner wrote a letter to an agent of Firemen's Fund, requesting that HTI's coverage with plaintiff be cancelled.

The responsibility to oversee the payment of corporate bills was that of Linda Hightower, HTI's business manager.[1] Ms. Hightower acknowledged at her deposition that she remembered receiving one bill from plaintiff in the latter part of 1980. However, she testified that when she received the bill she believed there was nothing owing on the policy and contacted HTI's insurance agent for an explanation. The agent told her he would check into the matter but never called her back. In contrast to Ms. Hightower's deposition testimony, plaintiff asserts that several billings were sent to HTI. The above indicates that a factual dispute exists as to when defendants Richard and Joanne Turner became aware of the existence of HTI's debt to plaintiff.

The circuit court granted summary disposition, MCR 2.116(C)(10), in favor of plaintiff, finding the distribution of HTI's assets to Richard and Joanne Turner was a fraudulent conveyance under MCL 566.14; MSA 26.884 and an illegal dividend under the Michigan Business Corporation Act, MCL 450.1101 *et seq.;* MSA 21.200(101) *et seq.*

Defendants first argue that a proceeding under

---

[1] After the sale of HTI, Linda Hightower held the same position with Dean Sellers, Inc., and continued to perform close-out work for HTI.

the Uniform Fraudulent Conveyance Act, MCL 566.11 *et seq.*; MSA 26.881 *et seq.*, is an equitable proceeding and that circuit courts do not have equity jurisdiction when there is an adequate remedy at law. Defendants assert that the Business Corporation Act provides an adequate remedy.

To recover under the Business Corporation Act, plaintiff would have to prove that defendants as directors breached the standard of conduct set forth in MCL 450.1541; MSA 21.200(541), which only holds defendants to the diligence, care and skill of an ordinarily prudent person. MCL 450.1834(a); MSA 21.200(834)(a). To recover from defendants as shareholders, plaintiff would have to prove defendants received distribution of HTI's assets "with knowledge of facts indicating that it was not authorized . . . ." Neither of these provisions afford plaintiff as great an opportunity for relief as does § 4 of the UFCA, which only requires proof of a transfer rendering the person insolvent without fair consideration.

A legal remedy cannot be said to give full and ample relief if its mode for obtaining relief is not as effectual as that which equity affords. *Powers v Fisher,* 279 Mich 442, 447; 272 NW 737 (1937). Equity has jurisdiction whenever it provides advantages not obtainable at law. *Id.,* 448. We conclude that the Business Corporation Act does not provide an ample alternate remedy.

Defendants also argue that the Business Corporation Act provides a specific remedy and thus supersedes "any implied remedy which may be available under the Uniform Fraudulent Conveyance Act." This rule of statutory construction is inapplicable where there is no conflict between the statutes. *Woll v Attorney General,* 409 Mich 500, 516; 297 NW2d 578 (1980). Section 551 of the Business Corporation Act begins with the clause

*"In addition to any other liability imposed by* this act *or other law* . . . ." MCL 450.1551; MSA 21.200(551). Thus, the two statutes at issue are not inconsistent.

Defendants also argue that unresolved factual disputes preclude a grant of summary disposition. However, the factual disputes defendants assert exist arise under § 5 of the UFCA. In the instant case plaintiff relies upon § 4. Section 4 provides:

> Sec. 4. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

The distribution of HTI's assets was unquestionably a conveyance of property from HTI to the Turners. It is equally apparent that fair consideration was not exchanged. More difficult is the question of whether the transfer rendered HTI insolvent. MCL 566.12(1); MSA 26.882(1) provides that a person is insolvent "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." We do not read the phrase "probable liability" as an implication that the debtor must be aware of existing debts. Such a definition would require an exploration of defendants' inner thoughts and largely defeat the purpose of § 4, which, as quoted above, applies "without regard to actual intent." Moreover, regardless of whether a debtor has or does not have knowledge of existing debts, creditors are equally harmed by conveyances of a debtor's assets when the debtor receives little, if anything, of value in return.

In the instant case, the unpaid premiums were "existing debts" at the time of the distribution and the distribution left HTI without resources. We conclude as a matter of law that the transfer rendered HTI insolvent. Thus, an application of the law to the undisputed facts indicates that the trial court properly granted summary disposition pursuant to § 4 of the UFCA.

Defendants also argue that the trial court erred by reconsidering an earlier ruling, at which time it initially denied plaintiff's motion for summary disposition. Defendants would have this Court hold that a trial court, having once ruled on an issue, must proceed to trial even if the court later becomes convinced that one of the parties is entitled to judgment as a matter of law and that the earlier ruling was erroneous. Defendants' argument is without merit. MCR 2.604 affords a court discretion to modify any form of decision prior to final judgment.

In light of our disposition, it is unnecessary to determine whether summary disposition was properly granted under the Business Corporation Act.

Affirmed.